UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMANDA BLOOM,

       Plaintiff,

   -v-

A360 MEDIA LLC,

       Defendant.

23-cv-11024 (JSR)

OPINION AND ORDER

JED S. RAKOFF, U.S.D.J.:

    On August 18, 2023, defendant A360 Media LLC moved to dismiss the complaint in its entirety. See Def. Mot. to Dismiss or to Transfer Venue ("Def. Opening Br."), ECF No. 20. After the Court held oral argument on the motion, plaintiff filed an amended complaint. See Am. Compl. ("AC"), ECF No. 47. The Court accordingly ordered the parties to submit supplemental briefing on the motion to dismiss as now directed at the amended complaint. After full consideration of the parties' written submissions and oral argument, the Court granted the motion to dismiss with prejudice by "bottom-line" order dated March 13, 2024. See 3/13/24 Order, ECF No. 52. This Opinion reconfirms that order and explains the reasons for that ruling.

I.    **Plaintiffs' Allegations**[1]

In November 2021, Shivon Zilis secretly gave birth to twins. Elon Musk was the father. AC, ¶¶ 11-12. In July 2022, when the media found out, a "tabloid feeding frenzy" ensued, prompted in part by the fact that only weeks before Zilis welcomed her twins, Grimes, Musk's then "longtime girlfriend," had also given birth to a child with Musk. Id. ¶¶ 11, 13.

On July 6, 2022, numerous "prominent celebrity-gossip outlets . . . published stories about Zilis and the twins she had with Musk," all of which included photographs of Zilis. Id. ¶ 14. A day later, Us Weekly published two articles about Zilis and her twins. Id. ¶¶ 1-2, 18. Both articles were published on Us Weekly's website, and one of the articles was linked to a story posted on Us Weekly's Instagram account. Id. ¶¶ 1-2, 18, 26. Both articles and the Instagram story, however, erroneously included a photograph of plaintiff, Amanda Bloom, instead of a photograph of Zilis. Id. ¶¶ 2, 19. Plaintiff, a married woman with a child, never had a romantic relationship with Musk; her only possible connection to the events in question was that she was roommates with Zilis years before. Id. ¶¶ 2, 6, 19, 25, 36-37, 59.

Almost immediately, plaintiff hired a lawyer, who contacted Miranda Siwak, the author of the articles, about the erroneous photograph. Id. ¶¶ 17, 30. Us Weekly subsequently "acknowledged the

---

[1] For purposes of resolving this motion, the Court draws all allegations from the amended complaint.

error," "removed the images" of plaintiff, "and replaced [the photographs of plaintiff] with images of Zilis." Id. ¶¶ 5, 30. Although the uncorrected articles were only posted on *Us Weekly*'s online platforms "for between 24 and 48 hours," nonetheless, because of syndication agreements that defendant has with other websites, the uncorrected articles are still accessible on other providers' websites. Id. ¶¶ 32-35.

On July 3, 2023, plaintiff sued defendant, the owner and operator of *Us Weekly*, in the Northern District of Georgia, and asserted two claims: (1) defamation under New York law and (2) a violation of Sections 50 and 51 of the New York Civil Rights Law. Compl., ¶¶ 1, 7, 52-147, ECF No. 1. On August 18, 2023, defendant filed a motion to dismiss, or in the alternative, to transfer venue to the Southern District of New York. See generally Def. Opening Br. On December 12, 2023, Judge Victoria Marie Calvert of the Northern District of Georgia granted defendant's motion to transfer the case and declined to reach the merits of the motion to dismiss, treating it as moot so far as her District was concerned. See 12/12/23 Order, ECF No. 33.

Upon transfer to the undersigned, both sides represented that the motion to dismiss was still pending and ripe for adjudication.[2] After the Court held oral argument on the motion, plaintiff filed a de-

---

[2] Plaintiff also informed the Court that she wished to withdraw her motion to proceed pseudonymously, so the Court ordered plaintiff to file a de-anonymized amended complaint by January 26, 2024, which she did. See 1/8/24 Order, ECF No. 41.

anonymized amended complaint, which was largely identical to her initial complaint but added additional allegations relevant to actual malice. The Court then ordered supplemental briefing so that it could determine whether the amended complaint should be dismissed.

## II.  Legal Standard

To survive a motion to dismiss for failure to state a claim, a complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).[3] A complaint must offer more than "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007). If plaintiff has "not nudged [her] claims across the line from conceivable to plausible, [her] complaint must be dismissed." Id. at 570. The Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008).

## III. Discussion

The Court will first address the threshold issue of whether it may consider the exhibits that defendant submitted with its motion to dismiss. Then, the Court will assess whether the amended complaint

---

[3] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, footnotes, and citations.

adequately alleges a defamation claim. Finally, the Court will determine whether the amended complaint has plausibly stated a claim under Section 51 of the New York Civil Rights Law. For the reasons explained below, the Court finds that the amended complaint fails to adequately allege actual malice, and accordingly dismisses the amended complaint with prejudice.

### a. Evidentiary Materials

Attached to its motion to dismiss, defendant submitted the two allegedly defamatory articles, a screenshot of the Instagram story that erroneously included the photograph of plaintiff, and the tweet from which defendant allegedly obtained the photograph of plaintiff that was used in the article. See Ex. A, ECF No. 20-2; Ex. B, ECF No. 20-3; Ex. C, ECF No. 20-4; Ex. D, ECF No. 20-5. At the time of the initial briefing, plaintiff did not object to the Court considering these exhibits. Indeed, thereafter, when plaintiff filed her amended complaint, it included a screenshot of the tweet in the body of the complaint and attached as exhibits the two articles and a screenshot of the Instagram story.

A complaint is deemed to contain a document if any one of three conditions is satisfied. First, the complaint may attach the document or incorporate it by reference. Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995). Second, the complaint may "rel[y]. . . upon its terms and effects" to such an extent that the document is "integral" to the complaint. Id. See also Chambers v.

Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002). Third, the document may be subject to judicial notice. See Fed. R. Evid. 201(b).

It is plainly proper for the Court to consider all of defendant's exhibits. First, plaintiff attached the articles and Instagram story to her amended complaint, and that alone is sufficient. Second, even if plaintiff had not done so, these documents are incorporated by reference and/or integral to the amended complaint because these publications provide the entire basis for plaintiff's claims. See also, e.g., Lindberg v. Dow Jones & Co., Inc., 20-cv-8231, 2021 WL 5450617, at *3 n.35 (S.D.N.Y. Nov. 22, 2021) (finding the publications at issue were properly considered in a defamation case); Catalanello v. Kramer, 18 F. Supp. 3d 504, 508 n.1 (S.D.N.Y. 2014) (same); Goldman v. Barrett, 15 Civ. 9223, 2017 WL 4334011, at *2 n.4 (S.D.N.Y. July 25, 2017) (same). Additionally, the tweet from which Us Weekly allegedly obtained the photograph of plaintiff is also integral to the amended complaint because plaintiff "relies . . . upon its terms and effect" to allege her claims, even going so far as to include a screenshot of it in the body of the amended complaint. See Int'l Audiotext Network, 62 F.3d at 72. See also AC, ¶¶ 21-22. The Court will accordingly consider defendant's exhibits when assessing whether the complaint passes muster under Rule 12(b)(6).

### b. Defamation

The Court now turns to the merits. "Under New York law a defamation plaintiff must establish five elements: (1) a written

defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." Palin v. N.Y. Times Co., 940 F.3d 804, 809 (2d Cir. 2019). Here, the parties do not dispute that actual malice is required to show fault. See Coleman v. Grand, 523 F. Supp. 3d 244, 254 (E.D.N.Y. 2021) (actual malice is required "[f]or statements on matters of public concern"); Kesner v. Buhl, 590 F. Supp. 3d 680, 693 (S.D.N.Y. 2022) (same); Pl. Resp. Opposing Def. Mot. to Dismiss ("Pl. Opp'n Br."), at 13-16, ECF No. 29; Pl. Suppl. Br. in Opp'n to Def. Mot. to Dismiss ("Pl. Suppl. Opp'n Br."), at 2-5, ECF No. 49. Defendant argues that the defamation claim should be dismissed for failure to adequately plead actual malice. The Court agrees.

Actual malice requires that the defamatory statement be "made with knowledge that it was false or with reckless disregard of whether it was false or not." Palin, 940 F.3d at 809. This is a "subjective" standard, requiring that "the speaker[]" entertain "subjective doubts about the truth of the publication." Church of Scientology Int'l v. Behar, 238 F.3d 168, 174 (2d Cir. 2001). "The reckless conduct needed to show actual malice is [thus] not measured by whether a reasonably prudent man would have published, or would have investigated before publishing, but by whether there is sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." Id. At the pleading stage, the

allegations in the complaint must "rais[e] a plausible inference of actual malice." Biro v. Conde Nast, 807 F.3d 541, 546 (2d Cir. 2015).

The amended complaint alleges the following circumstantial indicia of actual malice. Defendant: (1) "knowingly or recklessly disregarded information available to it showing that the woman whose image was featured in the [p]ublications was not Zilis"; (2) "disregarded proper journalistic standards by publishing [p]laintiff's image without taking appropriate steps to verify that the image was of Zilis"; (3) "failed to pursue further investigation despite obvious signs that" the photograph was not of Zilis; (4) failed to "employ any reasonable screening or checking procedures to ascertain whether the image it was using at the top of the article was of Zilis"; and (5) "rushed to publish" the articles containing plaintiff's photograph "purely to obtain economic benefits from quick publication." AC, ¶¶ 70-74. Without further factual enhancement, each of these allegations would be too conclusory to allege actual malice, but the amended complaint does include more particularized factual allegations in support of these indicia of actual malice.

Specifically, the amended complaint alleges that defendant's staff and editors "knew what Zilis looked like" because they "reviewed actual photos of Zilis, including on her Twitter feed and in the numerous other publicly available reports about Zilis." AC, ¶¶ 3, 20-21. Furthermore, "images of Zilis are easy to find," including in articles written by defendant's competitors on the same topic. Id. ¶ 23. Despite allegedly knowing what Zilis looks like, defendant used

a photograph of plaintiff, that was drawn from one of Zilis's tweets, even though the tweet from which it was drawn was "a reply to [p]laintiff" and "tagged [plaintiff]" and another individual "in the tweet." Id. ¶¶ 21-22. Because tagging an individual indicates that the photograph was of one of the tagged individuals, plaintiff alleges there was not even "an even chance that the person in the photo was Zilis" but only "one-in-three odds the image was of Zilis." Id. ¶¶ 21-22. To support that this could not have been an accidental mix-up, plaintiff further alleges that each of the articles also included an actual photograph of Zilis, who allegedly looks completely different from plaintiff. Id. ¶¶ 24, 36. Plaintiff alleges that this knowingly false use of her photograph was driven by a desire for economic gain, as the photograph was "candid," "eye-catching," and different than the photographs of Zilis that other tabloids had published. Id. ¶ 24.

These allegations still fall short of alleging actual malice. To start, the most glaring and fundamental problem is that almost all the allegations of actual malice are never tied to the actual author(s) of the relevant publications. "When there are multiple actors involved in an organizational defendant's publication of a defamatory statement, the plaintiff must identify the individual responsible for publication of a statement, and it is that individual the plaintiff must prove acted with actual malice." Dongguk Univ. v. Yale Univ., 734 F.3d 113, 123 (2d Cir. 2013). See also Palin, 940 F.3d at 810 ("When actual malice in making a defamatory statement is at issue, the critical question is the state of mind of those responsible for the

publication."); <u>N.Y. Times Co. v. Sullivan</u>, 376 U.S. 254, 287 (1964). Here, the amended complaint identifies Miranda Siwak as the author of the relevant articles. <u>See</u> AC, ¶ 17 ("Both articles were authored by Miranda Siwak, an *Us Weekly* writer working in New York."). However, only <u>one</u> of the many of allegations related to actual malice ever mentions Siwak or even the editors involved with the articles. <u>See id.</u> ¶ 20 ("*Us Weekly* knew the photo atop its Publications was not a photo of Zilis because Siwak and the editors of the Publications had reviewed Zilis's actual image and were familiar with her appearance. But they either intentionally disregarded the dissimilarity or recklessly published [p]laintiff's image instead."). All the other allegations related to actual malice vaguely reference what defendant, *Us Weekly*, or *Us Weekly*'s staffers and editors knew or did. But because those allegations are never tied to the actual author(s) of the publication, they cannot support an inference of actual malice. <u>See, e.g., id.</u> ¶¶ 3, 5, 21-24, 36, 70-74. The single allegation quoted above about what the author(s) of the articles collectively knew is too limited and conclusory to adequately to satisfy the requirement of actual malice. <u>See</u> <u>Rivera v. Time Warner Inc.</u>, 56 A.D.3d 298, 298 (1st Dep't 2008) ("Actual malice cannot be inferred from factual allegations merely suggesting that [the defendant] had reason to question the accuracy of the information at issue.").

Moreover, even assuming arguendo that the amended complaint had tied all of the relevant allegations to the author(s) of the publications at issue, the allegations would still be insufficient to

plausibly allege the critical requirement of actual malice. With respect to defendant's possession of contrary information, the amended complaint has, at best, plausibly alleged that defendant did not know if the photograph was of Zilis and failed to verify the accuracy of the photograph, despite knowing what Zilis looked like. See AC, ¶¶ 3, 20-23, 70-71, 73. But that is insufficient to raise an inference of actual malice, as all that those allegations plausibly suggest is a negligent failure to uncover the truth rather than a subjective awareness of falsity. See Liberman v. Gelstein, 80 N.Y.2d 429, 438 (1992) ("[T]here is a critical difference between not knowing whether something is true and being highly aware that it is probably false. Only the latter establishes reckless disregard in a defamation action."); Masson v. New Yorker Mag., Inc., 501 U.S. 496, 510 (1991) ("Mere negligence does not suffice. Rather, the plaintiff must demonstrate that the author in fact entertained serious doubts as to the truth of his publication or acted with a high degree of awareness of probable falsity.").

Nor can defendant's alleged failure to investigate whether the photograph was of Zilis save plaintiff's claim from dismissal. See AC, ¶¶ 22, 71-73. That is because it is well-established that in general a failure to investigate in and of itself is insufficient to show actual malice. Harte-Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 688 (1989) ("[F]ailure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard."); St. Amant v. Thompson, 390 U.S.

727, 733 (1968) ("Failure to investigate does not in itself establish bad faith."). See also Kipper v. NYP Holdings Co., Inc., 12 N.Y.3d 348, 355 (2009). It is only ever indicative of actual malice if it "amount[s] to purposeful avoidance" of "the truth," Sweeney v. Prisoners' Legal Servs. of N.Y., Inc., 84 N.Y.2d 786, 793 (1995), or if "there are obvious reasons to doubt the veracity of the allegedly defamatory statements," Biro v. Conde Nast, 963 F. Supp. 2d 255, 285 (S.D.N.Y. 2013), aff'd, 807 F.3d 541 (2d Cir. 2015). Here, there are no allegations defendant purposefully avoided finding out the truth about the photograph; the amended complaint only alleges there were "obvious signs" that the picture was not of Zilis. See AC, ¶ 72. But the Court is not required to accept such a conclusory statement as true in the absence of specific facts supporting that allegation. See id. Accordingly, the allegations pertaining to the failure to investigate cannot alone, or in combination with the other allegations, support a plausible inference of actual malice.

Finally, defendant's alleged motives for selecting the photograph of plaintiff do not support that defendant knew the photograph was not of Zilis or recklessly disregarded that fact. In essence, plaintiff alleges that defendant had an economic motive to use the photograph of plaintiff, instead of Zilis, because it differentiated defendant's articles from those of other publications. See id. ¶¶ 24, 74. But a desire to turn a profit does not in and of itself indicate a defendant acted with actual malice. See Harte-Hanks Commc'ns, 491 U.S. at 667 ("Nor can the fact that the defendant published the defamatory material

in order to increase its profits suffice to prove actual malice."); MiMex Grp., Inc. v. Sparrow Fund Mgmt. LP, 17 Civ. 7568, 2018 WL 4735717, at *12 (S.D.N.Y. Sept. 29, 2018). Cf. Jankovic v. Int'l Crisis Grp., 822 F.3d 576, 596 (D.C. Cir. 2016) ("But the mere presence of some ulterior motive--whether a profit motive, a motive to produce the most interesting stories, or a personal desire to harm the subject of a story--is not enough to support a finding of actual malice."). And even if such allegations could, in the abstract, support an inference of actual malice, here they would not because plaintiff's theory that defendant chose the photograph of plaintiff for its commercial appeal defies reason. See AC, ¶ 24. For it makes absolutely no sense that defendant would knowingly use a photograph of a completely different person who is not famous to make articles about a person who is famous stand out, as using an incorrect photograph of an unknown individual likely would have the opposite effect. Because the Court is not required to check its common-sense at the door when evaluating the plausibility of a complaint, the Court finds that defendant's alleged motive cannot support an inference of actual malice. See Ashcroft, 556 U.S. at 679. Conclusory allegations and rhetoric aside, all the amended complaint really alleges is an unfortunate but unintentional mistake by defendant that was swiftly corrected.

In sum, the Court concludes that the amended complaint has failed to adequately plead actual malice, so plaintiff's defamation claim must be dismissed.

### c. New York Civil Rights Law Section 51

Defendant also argues that plaintiff's claim, under Section 51 of the New York Civil Rights Law, must be dismissed for failure to plead actual malice. The Court once again agrees.

"Section 51 of the N.Y. Civil Rights Law provides a claim for an injunction and damages in favor of 'any person whose name, portrait, picture or voice is used within this state for advertising purposes or for the purposes of trade without written consent.'" Oliveira v. Frito-Lay, Inc., 251 F.3d 56, 63 (2d Cir. 2001) (quoting N.Y. Civ. Rights Law § 51) (alteration adopted). In general, Section 51 "do[es] not apply to reports of newsworthy events or matters of public interest." Messenger v. Gruner + Jahr Printing & Publ'g, 94 N.Y.2d 436, 441 (2000).[4] There are, however, two exceptions. A newsworthy article may still actionable under Section 51 if "the picture has no real relationship to the article" or if the article is substantially fictionalized. Messenger, 94 N.Y.2d at 442-43, 446.

Here, plaintiff has adequately alleged the first exception may apply here. The amended complaint alleges that the photograph is of plaintiff, who has no connection to the relationship between Zilis and Musk. See AC, ¶¶ 2, 19. Because the amended complaint alleges that the photograph of plaintiff has no relationship, based on plaintiff's appearance, identity, or social kinship, to an article about Zilis and

---

[4] For purposes of this motion, plaintiff concedes that the publications "constitute[] . . . report[s] on a matter of public interest." Pl. Opp'n Br., at 16 n.7.

her twins, this lawsuit is distinguishable from the other cases where courts have found a real relationship between a photograph and a publication. See, e.g., Abdelrazig v. Essence Commc'ns, Inc., 225 A.D.2d 498, 498 (1st Dep't 1996) ("it cannot be said, as a matter of law, that there is no real relationship between the article, which concerns newsworthy fashion trends in the Black community and the photograph in which plaintiff appears in the background wearing traditional African garb"); Alvarado v. K-III Mag. Corp., 203 A.D.2d 135, 136 (1st Dep't 1994) ("It is enough that the photograph illustrate[s] the general theme of the article and plaintiffs' depiction, concededly enjoying a concert, is sufficient to take the use of their photograph out of the purview of the statute."); Finger v. Omni Publ'ns Int'l, Ltd., 77 N.Y.2d 138, 143 (1990) ("there is a real relationship between the fertility theme of the article and the large family depicted in the photograph.").[5]

---

[5] The Court notes that plaintiff has not adequately alleged that the second exception -- substantial fictionalization -- applies here. This exception applies only "in the rare case[s]" where "an article purporting to be newsworthy" is "in fact so infected with fiction, dramatization or embellishment that it cannot be said to fulfill the purpose of the newsworthiness exception." Edme v. Internet Brands, Inc., 968 F. Supp. 2d 519, 528 (E.D.N.Y. 2013). Here, plaintiff has not alleged that the article purported to be discussing plaintiff, only that the articles used a photograph that was of plaintiff, instead of Zilis. This case thus does not raise to the level of "severe" falsity that is required for this exception to apply. See Lerman v. Flynt Distrib. Co., Inc., 745 F.2d 123, 132 (2d Cir. 1984). See also Messenger, 94 N.Y.2d at 446 (explaining that "invented biographies of plaintiffs' lives" are "so infected with fiction, dramatization or embellishment that it cannot be said to fulfill the purpose of the newsworthiness exception").

However, this does not end the Court's inquiry. The Court must also determine whether plaintiff is required to allege actual malice when a Section 51 claim is premised on a photograph of a private person that bears no real relationship to an otherwise newsworthy article. The parties vigorously dispute this issue, but never identify any case that directly answers the question presented here.[6] Since "New York law is uncertain or ambiguous on th[is] issue," the Court must "carefully . . . predict how the highest court of the forum state would resolve the uncertainty or ambiguity." Lelchook v. Société Générale de Banque au Liban SAL, 67 F.4th 69, 76 (2d Cir. 2023). For the reasons explained below, on the facts of this case, the Court predicts the Court of Appeals of New York would require plaintiff to allege actual malice.

The Court must look to state law to determine the relevant fault standard because plaintiff is a private figure. Cf. Gertz v. Robert Welch, Inc., 418 U.S. 323, 347 (1974) ("We hold that, so long as they do not impose liability without fault, the States may define for

---

[6] The Court notes that as a constitutional matter, it is clear that actual malice is required to succeed on a Section 51 claim, where a defendant has appropriated the likeness of a limited-purpose public figure and that likeness bears no real relationship to the article or the article is infected with substantial fictionalization. See Davis v. High Soc'y Mag., Inc., 90 A.D.2d 374, 382-84 (2d Dep't 1982); Lerman, 745 F.2d at 132-33, 136-40. That, however, does not answer the question of the required level of fault for a private plaintiff. See Quezada by DeLamota v. Daily News, 501 N.Y.S.2d 971, 975 (1st Dep't 1986) (noting "considerable uncertainty, under Federal constitutional law, as to the appropriate standard of care to be applied in privacy cases where the plaintiff is neither a public official nor a public figure").

themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual.").[7] The relevant state law is New York's anti-SLAAP statute. New York's anti-SLAAP statute applies to any "action involving public petition and participation," which is defined as a "claim based upon: (1) any communication in a place open to the public or a public forum in connection with an issue of public interest; or (2) any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition." See N.Y. Civ. Rights Law § 76-a.

This lawsuit qualifies as an "action involving public petition and participation." There is no dispute that the relevant publications reported on an issue of public interest, and plaintiff has provided no argument as to why the publications, which were posted on Us Weekly's website and Instagram, do not constitute "communication[s] in a place open to the public or a public forum." See N.Y. Civ. Rights Law § 76-a. See, e.g., Lindberg v. Dow Jones & Co., Inc., 20-CV-8231, 2021 WL 3605621, at *7 (S.D.N.Y. Aug. 11, 2021); Ctr. For Med. Progress v. Planned Parenthood Fed'n of Am., 551 F. Supp. 3d 320, 332 (S.D.N.Y.

---

[7] After Gertz, the validity of the Supreme Court's holding in Time, Inc. v. Hill, 385 U.S. 374, 387-88 (1967), that "the constitutional protections for speech and press preclude the application of the New York statute to redress false reports of matters of public interest [i.e., Section 51] in the absence of proof that the defendant published the report with knowledge of its falsity or in reckless disregard of the truth," is in some doubt. However, for the reasons explained below, the same result would obtain under New York state law.

2021). And even if this case does not fall within the first disjunctive prong of the anti-SLAPP statute, it falls within the second. Here, defendant was engaging in conduct in furtherance of its constitutional right of free speech: publishing an article on a newsworthy topic. See Trump v. Trump, 79 Misc. 3d 866, 876 (N.Y. Sup. Ct. 2023); Howell v. N.Y. Post Co., 81 N.Y.2d 115, 123 (1993); Groden v. Random House, Inc., 61 F.3d 1045, 1051 (2d Cir. 1995).[8]

Because this is "an action involving public petition and participation," under New York's anti-SLAPP statute, "damages may only be recovered if the plaintiff, in addition to all other necessary elements, shall have established by clear and convincing evidence that any communication which gives rise to the action was made with knowledge of its falsity or reckless disregard of whether it was false, where the truth or falsity of such communication is material to the cause of action at issue." N.Y. Civ. Rights Law § 76-a(2). The question therefore becomes whether "the truth or falsity" of a communication "is material" to plaintiff's Section 51 claim. Plaintiff argues that it is not, because a showing of falsity is not required for the no

---

[8] Plaintiff argues to the contrary because "a violation of Section 51[] is not lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest." Pl. Suppl. Opp'n Br., at 7-8. That cannot be right because if plaintiff's argument were credited, New York's anti-SLAPP statute would never apply to any defamation or Section 51 claim, as both always allegedly involve conduct that is violative of the law. And the case plaintiff cites is distinguishable because it involved conduct, "threats and intimidation in violation of the VRA and KKK Act," that is not entitled to "First Amendment protection." See Nat'l Coal. on Black Civic Participation v. Wohl, 512 F. Supp. 3d 500, 518 (S.D.N.Y. 2021).

real relationship exception to apply. See Pl. Suppl. Opp'n Br., at 7.
While that may be true in the abstract, it is not true in this case.

The entire thrust of plaintiff's theory of liability under Section
51 is falsity. See AC, ¶ 129 ("Defendant as publisher of *Us Weekly* and
through its agents, violated N.Y. Civil Rights Law §§ 50-51 by invading
[p]laintiff's privacy, misappropriating her likeness, and publishing
an image of [p]laintiff in articles on the *Us Weekly* website and on
the *Us Weekly* Instagram account in a way that falsely represented that
[p]laintiff had an extramarital affair with Musk and conceived children
with him, all within weeks of his conceiving another child with his
girlfriend."). Thus, plaintiff's argument for showing there is no real
relationship between plaintiff's photograph and the publications rests
on showing a factual error: the photograph was incorrectly believed
to be of Zilis (when it was of plaintiff) and that the individual in
the photograph, properly identified, has no real relationship to the
publications. A theory predicated on a factual error necessarily
requires a showing of falsity and thus, under the anti-SLAAP statute,
a showing of actual malice. Cf. Baiul v. NBCUniversal Media, LLC, 607
F. App'x 99, 100 (2d Cir. 2015); Lerman, 745 F.2d at 132-33. To hold
otherwise would permit plaintiff to impermissibly evade the
protections afforded to the press when sued for defamation by simply
recasting the same allegations as a Section 51 claim. Cf. Dongguk
Univ., 734 F.3d at 129; Aristocrat Plastic Surgery, P.C. v. Silva, 206
A.D.3d 26, 29 (1st Dep't 2022). See also Fils-Aime v. Enlightenment
Press, Inc., 507 N.Y.S.2d 947, 949-50 (1st Dep't 1986) ("Given the

19

similarity of issues raised in defamation and privacy claims, particularly as they implicate first amendment concerns, there would seem to be no reason why the same standard of fault should not be applied in both types of cases.").

The Court accordingly concludes that here plaintiff is required to plead actual malice for the Section 51 claim to proceed forward. Because for the reasons explained above the amended complaint fails to adequately plead actual malice, the Section 51 claim must also be dismissed.

### d. Leave to Amend

The Court must now determine whether plaintiff should be granted leave to further amend her already-amended complaint (even though plaintiff has not requested leave to amend). "Although Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint shall be freely given when justice so requires, it is within the sound discretion of the district court whether to grant or deny leave to amend." Schvimmer v. Off. of Ct. Admin., 857 F. App'x 668, 671 (2d Cir. 2021) (cleaned up). The Court may deny leave to amend if it determines amendment would be futile or there has been a "repeated failure to cure deficiencies by amendments previously allowed." United States ex rel. Ladas v. Exelis, Inc., 824 F.3d 16, 28 (2d Cir. 2016). See also in re Trib. Co. Fraudulent Conv. Litig., 10 F.4th 147, 175 (2d Cir. 2021). Here, the Court concludes that plaintiff should not be granted leave to amend not only because plaintiff has not requested

leave to further amend but also because she has failed to correct in her already-amended complaint the deficiencies that were already brought to her attention in defendant's original motion to dismiss. See Exelis, 824 F.3d at 28-29; Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1132 (2d Cir. 1994). The Court accordingly dismisses the amended complaint with prejudice.

**IV.   Conclusion**

For the reasons explained above, the Court hereby dismisses the amended complaint with prejudice. The Clerk of Court is respectfully directed to enter final judgment and close the case.

New York, NY
June 3, 2024                                    JED S. RAKOFF, U.S.D.J.